MENO MARTINEZ *v.* GODOFREDO P. PARADO, DEFENDANT, PEPEEKEO SUGAR CO., BANK OF HAWAII AND BISHOP NATIONAL BANK OF HAWAII AT HONOLULU (HILO BRANCHES), GARNISHEES.

No. 2409.

ARGUED JULY 11, 1939.                    DECIDED AUGUST 21, 1939.

COKE, C. J., PETERS AND KEMP, JJ.

OPINION OF THE COURT BY KEMP, J.

The Filipino Aid Association is an unincorporated mutual benefit society which, by reason of the benefits it promises its members, is subject to the provisions of Act 177, L. 1937. The plaintiff herein, Meno Martinez, is the secretary-treasurer of said association and the holder of a claim by assignment from said association against the defendant, Godofredo P. Parado, a member of said association.

Plaintiff's declaration, filed in the district court of South Hilo, sets forth in substance that on September 22,

1938, the defendant made application to said association for a "going home benefit" pursuant to the bylaws of the association; that he represented to said association that he intended to depart for his home in the Philippine Islands on September 28, 1938; that on September 24, 1938, said association, pursuant to its bylaws and said application, paid defendant $500 as his "going home benefit"; that said defendant did not depart for his home in the Philippine Islands as stated in his application and has notified said association that he intends to remain in Hawaii for another five years; that under article VIII of the bylaws of said association a member who receives his "going home benefit" but who does not "go home" is obligated to said association; that demand made on defendant by the association for the return of said payment to the association was refused; that said association has assigned said claim to plaintiff. The prayer is for judgment in the sum of $500, attorney's commissions and costs. The defendant entered a general denial.

Upon the conclusion of plaintiff's evidence the district magistrate granted defendant's motion for a nonsuit and plaintiff has appealed on points of law.

The facts established by the evidence are essentially the same as the facts alleged in the declaration. The evidence, however, established that the defendant became a member of the association on September 20, 1934, holding a double membership, and that the bylaws of the association filed with the insurance commissioner as required by Act 177, L. 1937, omitted from article VIII of the bylaws produced by plaintiff the following: "If the member does not go home after receiving his benefit, he must return the full amount of the said benefit and he will continue to be a member." The evidence further discloses that on December 2, 1934, the language above quoted as having been omitted from the bylaws filed with the insurance

commissioner was adopted as an amendment to the by-laws theretofore in force and that no action to delete said amendment has ever been taken by either the directors of the association or by the members. It was also shown that the defendant informed the association of his intention to apply for a going-home benefit on November 1, 1937, and that his application was approved December 23, 1937.

The plaintiff's notice of appeal states the point of law upon which his appeal is taken to be "that the District Magistrate erred in granting the defendant's motion for non-suit and in rendering judgment in favor of the defendant."

The district magistrate has certified that the nature of action, decision made and the points of law upon which the appeal is taken are as follows:  "(1) This is an action in assumpsit to recover the sum of $500.00 under the facts alleged in the declaration. (2) At the close of the plaintiff's case the defendant moved for a non-suit on the following grounds, namely: (a) that the plaintiff has failed to prove the necessary or material allegations of the complaint and (b) that the evidence of the plaintiff shows affirmatively that he is not entitled to recover upon his complaint. (3) I granted the motion for non-suit upon the specific ground that the certified copies of the Constitution and By-Laws of the Plaintiff's Assignor filed with the Insurance Commissioner pursuant to Act 177 of the Session Laws of 1937, did not have included therein the by-law provision referred to in the Plaintiff's Declaration, namely, the by-law provision which is a portion of Article VIII of said By-Laws, as set forth in Plaintiff's Exhibit 'D' which reads as follows: 'If a member does not go home after receiving his benefit he must return the full amount of the said benefit.' (4) The plaintiff appealed from said judgment of non-suit upon the ground that the District Magistrate

of South Hilo erred in granting the motion for non-suit upon the grounds above stated or upon any other ground stated in the motion for non-suit."

We are first confronted with the necessity of determining what questions of law are presented for our decision. The magistrate's certificate fixes and limits the issues upon such appeals as this. As said by this court in *Territory* v. *Schaefer*, 19 Haw. 214: "Defendant finally urges that the ordinance was superseded or impliedly repealed by R. L. sections 3115 and 3116, as amended by Act 68 of the laws of 1907, following the ruling made in *Territory* v. *McCandless*, 18 Haw. 616, that a county has no power to prohibit by ordinance an act already made penal by territorial statute. This point of law was not stated in the certificate of appeal and consequently cannot be considered."

In *Murphy* v. *McKay*, 23 Haw. 173, the court reviewed the earlier decisions and said: "It is not necessary to set forth in the notice of appeal the points of law upon which the appeal is taken, but it is necessary to state in the notice of appeal that the appeal is upon points of law. The points of law must be stated in the district magistrate's certificate of appeal, and if not stated therein the appeal will be dismissed."

From the foregoing it is clear that we may consider only the questions of law stated in the magistrate's certificate of appeal. Both counsel have argued various other questions than the one stated in the magistrate's certificate but regardless of their materiality to the merits of the controversy we are not authorized to consider them. We have had considerable difficulty in determining just what point of law the magistrate's certificate stated but when read in connection with his oral decision where he said: "The Court is inclined to accept the theory advanced by the Defendant in this case, believing that a Mutual Society

operates in the Territory of Hawaii by virtue of the Statute which prescribes its guidance and operations. That any action by a Mutual Society, so organized under the Statute, must be primarily based upon its By-Laws. Inasmuch as the By-Laws in question are those approved by the Commissioner, it follows that the action of the Plaintiff against the Defendant cannot be maintained," we conclude that the point of law decided and presented for our determination may be stated to be, did the failure of the association to include in the certified copy of its bylaws filed with the insurance commissioner the provision with reference to repayment of going-home benefits have the legal effect of eliminating said provision from its bylaws?

"It is well settled that the constitution, rules and by-laws of an unincorporated association if they are not immoral, contrary to public policy or the law of the land, or unreasonable, constitute a contract between the members which the courts will enforce. If, however, an association, or a majority of its members, passes by-laws which are unreasonable or contrary to law or public policy, and attempts to enforce them as against a dissenting or unwilling minority, such minority may undoubtedly, in a proper case, appeal to the courts for relief against their enforcement. * * * Moreover, even though the rules themselves may be unobjectionable, the acts of members of an association in enforcing the rules of the organization may be unreasonable, oppressive, and wrongful and call for judicial interference." 4 Am. Jur., § 9, p. 460.

If the provision of the bylaws produced by the plaintiff in this case but omitted from the certified copy thereof filed with the commissioner of insurance by the association constitutes a part of the bylaws of the association, it constitutes a contract between the members which the courts will enforce unless it contains some one of the objection-

able features pointed out in the above quotation from American Jurisprudence.

It is pertinent to here state that the certificate of appeal does not present the question of whether or not the bylaw provision in question is immoral, unreasonable or contrary to law or public policy. The magistrate has not included that question in his certificate and the defendant bases his entire objection to a consideration of said provision upon the proposition that, having been omitted from the bylaws filed with the insurance commissioner, it no longer constitutes a part of the bylaws. That is exactly what the district magistrate decided. That is the sole question presented for our determination by the appeal.

Defendant relies upon the provisions of Act 177, L. 1937, to support the magistrate's holding. He particularly relies upon sections 6852-A and 6852-F of said Act which are in part as follows: "Sec. 6852-A. Registration. Any such society before doing business or engaging in any act shall file with the insurance commissioner duly certified copies of its constitution or organic instrument under which it purports to operate, by-laws, rules and regulations, if any. * * * Upon the filing of the foregoing, and the furnishing of such additional information as the commissioner may require, if it appear to the satisfaction of the commissioner that the purposes of said society are lawful, the commissioner shall issue a certificate registering such society and licensing it to operate in the Territory of Hawaii." "Sec. 6852-F. * * * Mutual benefit societies promising or offering to pay death or sick or disability benefits in an amount equal to or in excess of twenty-five dollars ($25.00) shall, subject to the approval of the commissioner, have the power to make a constitution and bylaws for the government of the society, the admission of its members, the management of its affairs, and the fixing and readjusting of the rates of contribution of its mem-

bers, and shall have the power to amend such constitution and by-laws and such other powers as are necessary to carry into effect the object and purposes of the society, but shall not suspend temporarily any part of its constitution or by-laws as the same are governed by this Act. Upon compliance with the provisions of this Act any such society engaged in transacting business or operating in this Territory may exercise all of the rights conferred by this Act, and all of the rights, powers and privileges possessed by it under its constitution and by-laws, rules and regulations or articles of incorporation not inconsistent with this Act."

We have seen that the constitution, rules and bylaws of an unincorporated society or association, with certain reservations, constitute a contract between the members which the courts will enforce but this does not help us to determine what, under our regulatory statute, constitutes the bylaws of such a society.

The bylaws of the society in question filed with the insurance commissioner purport to be the original bylaws adopted by the society and subsequent amendments thereto adopted by the board of directors, all enacted prior to the effective date of the Act requiring them to be filed with the commissioner. The bylaw provision in question was adopted as an amendment by the board of directors on December 2, 1934, and ratified by the members at the biennial meeting held in December, 1935. The bylaws filed with the commissioner in 1937, as required by Act 177, L. 1937, are certified and sworn to by the secretary-treasurer of the society to be a true copy thereof. The statute requires a society offering death, sick or disability benefits to file with the insurance commissioner duly certified copies of its constitution and bylaws but does not prescribe which of its officers shall certify them. Upon the filing of the foregoing with the commissioner, if it

appears to his satisfaction that the purposes of the society are lawful, he issues a certificate registering such society and licenses it to operate in the Territory. It does not necessarily follow, however, that a failure to include in the certified copy of the bylaws filed with the commissioner a bylaw relating to the business of the society other than its death, sick and disability benefits, prevents such a bylaw from being applied in the consideration of a case involving transactions which do not affect either directly or indirectly the death, sick or disability benefits offered by the society to its members.

Prior to 1935 when the legislature amended section 6852, R. L. 1935, by Act 172, unincorporated mutual benefit societies were not subject to governmental regulation. By the 1935 amendment societies offering death, sick or disability benefits of $250 or more were subjected to certain regulations by the commissioner of insurance. In 1937 the legislature further amended said section by making all societies offering death, sick or disability benefits of $25 or more subject to the provisions of said Act as amended.

The legislature has made it clear that what it had in mind in the enactments in question was the protection of the contracts of the members of such societies for death, sick and disability benefits.

Some of the provisions of the Act which lead us to the above conclusion are the following: Section 6852-C confers upon the commissioner the same powers, authorities and duties relating to examinations of societies offering death, sick or disability benefits as are imposed upon him under chapter 224, R. L. 1935, with reference to insurance companies. Section 6852-F prescribes what funds the society must maintain as a prerequisite to its right to issue death, sick or disability benefit certificates and prescribes no such requirement as a prerequisite to its right to issue certifi-

cates for other benefits such as the one involved in this case. Section 6852-B prescribes what disposition the society may make of the funds received by it from its members on account of death benefits or disability funds and the percentage of such funds that may be used for expenses in connection with the management or operation of such funds. The Act is silent as to the use, maintenance and management of other funds received by the society from its members.

It is clear that if the society in question offered only going-home benefits it would not be subject to the provisions of the regulatory Act in question. A consideration of the bylaws of the society makes it clear that the offering of going-home benefits does not affect either directly or indirectly the death, sick or disability benefits offered by the society to its members for the reason that no part of the going-home benefits is paid out of the funds raised and maintained for the payment of death, sick or disability benefits.

We conclude that, the appeal presenting as it does the sole question which we have discussed, the magistrate's decision was error and that the case should be remanded for further proceedings in which all defenses properly interposed may be considered.

*H. Irwin* (*Irwin & Harlocker* on the brief) for plaintiff.

*W. H. Smith* (also on the brief) for defendant.