ROBERT A. STEWART, Plaintiff-Appellant, *v.* EDWARD BRENNAN and ROGER LINDUS, Defendants-Appellees

NO. 11660

(CIVIL NO. 70248)

JANUARY 15, 1988

BURNS, C.J., HEEN AND TANAKA, JJ.

## OPINION OF THE COURT BY TANAKA, J.

This litigation involves the premises demised under an April 20, 1981 sublease (Sublease) between defendants Edward Brennan (Brennan) and Roger Lindus (collectively Defendants), the owners of Niu Valley Shopping Center (Niu Center), as the "Landlord," and Stewart Properties, Inc. (Properties), as the "Tenant." Plaintiff Robert A. Stewart (Stewart), the assignee of Properties' claim, appeals (1) the oral judgment notwithstanding the special verdict (judgment n.o.v.) in favor of Defendants, (2) the written order which conditionally granted Defendants' alternative motion for a new trial, and (3) the summary judgment in Defendants' favor. We hold that the trial court improperly granted the oral judgment n.o.v., the conditional written order, and the summary judgment. We reverse the judgments and order, reinstate the special verdict, and remand the case for further proceedings.

## I. FACTS

In 1964 the owners[1] of the Niu Center subleased a portion of the premises to Stewart Pharmacies, Ltd. (Pharmacies) for a 20-year term. Although the 1964 sublease limited the use of the premises to the operation of a drugstore, Pharmacies divided the premises into three separate spaces. Pharmacies operated a drugstore in one of the three spaces, sub-subleased the second to Properties for the operation of a coffee shop restaurant, and sub-subleased the third space to an unrelated corporation for the operation of a restaurant, named the Sty, which sold and served alcoholic beverages. The Niu Center's owners did not object to this arrangement despite the variance between the actual uses of the premises and the use specified in the 1964 sublease.

Relations between Pharmacies and the Niu Center's owners were not amicable: By 1981 there had been two arbitrations, two

---

[1] The owners of the Niu Valley Shopping Center in 1964 were Edward Brennan (Brennan), F.H. Lindus, and Charles J. Pietsch, Jr. F.H. Lindus died and left his interest to Roger Lindus, who resides in Arizona and is a passive owner. Charles J. Pietsch, jr. sold his interest, presumably to the current owners. The owners are the lessees of the shopping center land pursuant to a master lease dated September 28, 1962.

circuit court cases, and two supreme court appeals involving them. In an effort to terminate the relationship in a mutually agreeable manner, the parties entered into negotiations which resulted in (1) the cancellation of the 1964 sublease to Pharmacies, (2) the assignment of the Sty restaurant sub-sublease from Pharmacies to Defendants, and (3) the execution of the Sublease from Defendants to Properties for the space occupied by Properties. The Sublease was for a term commencing April 1, 1981 and ending on February 28, 1985,[2] but it provided that if Properties sold and assigned the Sublease to an unrelated party by April 1, 1982, the assignee would have an option to extend the term for two five-year periods. The purpose of the latter provision was to motivate Properties to sell and assign the Sublease so that the landlord-tenant relationship between Defendants and Properties could be severed within the one-year period.

On February 1, 1982, KO-TE-YA Hawaii, Inc. (KO-TE-YA) made a written offer to purchase Properties' assets, including the Sublease. The offer included a condition that the closing would be subject to Defendants' written agreement that KO-TE-YA would have the right to apply for a liquor license to sell alcoholic beverages on the premises. In late February 1982, Brennan indicated Defendants' unwillingness to so agree and KO-TE-YA withdrew its offer. Despite subsequent efforts, Properties failed to locate a purchaser of its assets and assignee of the Sublease prior to the April 1, 1982 deadline.

On March 23, 1982, Properties sued Defendants. The first amended complaint includes seven counts. Count 1 alleges that Defendants unreasonably withheld their consent to the proposed assignment of the Sublease from Properties to KO-TE-YA. Count 2 alleges that Defendants "interfered with the contractual relations" between Properties and KO-TE-YA and "other potential assignees." Record, Vol. 1 at 168. Count 3 alleges that Defendants "interfered with the negotiations of [Properties] and potential purchasers," thereby "in effect, unreasonably withheld consent to an assignment of said Sublease." *Id.* Count 4 seeks to have certain terms in the Sublease declared null and void because of duress. Prop-

---

[2] The 1964 sublease to Stewart Pharmacies, Ltd. (Pharmacies) would have expired on August 1, 1984.

erties seeks punitive damages in count 5. Count 6 seeks to have declared null and void paragraph 43(f) of the Sublease which gives the option to extend its term only to an assignee under an assignment made prior to April 1, 1982. Count 7 seeks a declaratory judgment that the Sublease "does not restrict . . . [the] selling and serving liquor on the premises." Record, Vol. 1 at 171.

On August 10, 1983, the circuit court granted Defendants' "Motion for Separate Trial on Issue of Whether Lease Permits Sale of Intoxicating Liquor." A trial was held on that issue, and on July 2, 1985, the jury rendered its special verdict finding that the Sublease permitted the sale of liquor. A judgment on the special verdict was entered on August 26, 1985.

On August 18, 1985, however, Defendants filed a motion for judgment n.o.v. or, in the alternative, for new trial. On March 4, 1986, the trial court issued a written order stating that it had granted a judgment n.o.v. in Defendants' favor[3] and was conditionally granting a new trial. On May 28, 1986, the court granted summary judgment in Defendants' favor on counts 1, 4, 5, 6, and 7, but not on counts 2 and 3. However, on a motion for reconsideration, the court subsequently granted Defendants a summary judgment on all counts of the amended complaint.

Stewart, who had been substituted in place of Properties as the real party in interest on April 2, 1985,[4] timely appealed.

## II. JUDGMENT N.O.V.

Paragraph 30 of the Sublease provided:

(30) *Use of Premises.* The Tenant will not use the demised premises for the conduct of any business except that of a coffee shop restaurant. No coin-operated games shall be used on the demised premises.

---

[3] Although the trial court entered its findings of fact and conclusions of law to support a judgment n.o.v. in Defendants' favor on March 4, 1986, no written order granting Defendants'·motion for a judgment n.o.v. was ever filed.

[4] After the filing of the complaint and during the pendency of this action, Stewart Properties, Inc. (Properties) filed a Chapter 7 petition in the United States Bankruptcy Court for the District of Hawaii. Pursuant to the Bankruptcy Court's order of March 7, 1983, Properties' interest in this action (Civil No. 70248) was assigned to Robert A. Stewart (Stewart).

The Sublease contained no other provision governing the use of the premises.

Stewart's stance was that the term "coffee shop restaurant" permitted the sale of liquor on the premises. Defendants contended otherwise. In its special verdict, the jury agreed with Stewart.

In moving for judgment n.o.v., Defendants' contention was that since Stewart produced no evidence of any "expressed" intent concerning the meaning of the term "coffee shop restaurant" by the parties, the jury verdict was unsupportable. The trial court agreed with Defendants and orally granted the judgment n.o.v. For the reasons stated below, we hold that the trial court erred.

## A.

Initially, we note that because a motion for judgment n.o.v. "is technically only a renewal of the motion for directed verdict made at the close of the evidence, it cannot assert a ground that was not included in the motion for a directed verdict." 9 C. Wright & A. Miller, Federal Practice and Procedure: *Civil* § 2537 at 598 (1971). *See also Lovell Enter., Inc. v. Campbell-Burns Wood Prod., Inc.*, 3 Haw. App. 531, 540, 654 P.2d 1361, 1367 (1982). The record reveals that Defendants violated this proscription.

At the close of Stewart's case, Defendants moved for directed verdict "on the grounds that we've taken the evidence which has been adduced that Defendant is entitled to a verdict and I'm not going to make a long argument on it." Tr. Vol. IV at 516. At the close of all the evidence, Defendants again moved for a directed verdict. The following exchange occurred between Defendants' counsel and the court:

MR. LEAVITT: Yes. We renew our Motion for Directed Verdict at this time, your Honor.

THE COURT: The Court is denying your motion.

MR. LEAVITT: Very well.

MR. BYBEE [Stewart's counsel] For the reasons stated?

THE COURT: Same reasons.[5]

---

[5] When denying Defendants' motion for directed verdict made at the close of Stewart's case, the court stated, "For the purpose of the motion and viewing the evidence in the light most favorable to the respondents [sic] to that motion, court is denying the motion." Tr. Vol. IV at 516.

Tr. Vol. V at 172 (footnote added).

Defendants' stated grounds for their motions for directed verdict clearly did not satisfy the mandate of Hawaii Rules of Civil Procedure (HRCP) Rule 50(a) which provides that a "motion for directed verdict shall state the specific grounds therefor." Stewart, however, did not object to Defendants' failure to state specific grounds for their motions. *See Deponte v. Ulupalakua Ranch, Ltd.*, 48 Haw. 149, 150, 396 P.2d 826, 827 (1964).

The inevitable result of Defendants' violation of HRCP Rule 50(a) was that Defendants asserted specific grounds in their motion for judgment n.o.v. which they had not stated in their motions for directed verdict. Stewart contended below that Defendants, in support of their motion for judgment n.o.v., could not assert grounds not stated in their motions for directed verdict. Although Stewart mentioned this fact in the body of his opening brief, he did not urge it as a basis for invalidating the judgment n.o.v. Stewart assumed that Defendants had based their motions for directed verdict and judgment n.o.v. on Stewart's failure to present a prima facie case at trial and presented arguments in his briefs based on that assumption.

Since Stewart failed to state that Defendants' improper assertion of new grounds in their motion for judgment n.o.v. rendered the granting of that judgment improper, Stewart waived that error on appeal. *Quality Furniture, Inc. v. Hay*, 61 Haw. 89, 92 n.4, 595 P.2d 1066, 1068 n.4 (1979); *Ala Moana Boat Owners' Ass'n v. State*, 50 Haw. 156, 157-59, 434 P.2d 516, 517-18 (1967). Accordingly, we decline to consider this matter on appeal.

### B.

As indicated above, the resolution of the dispute depended on the meaning of the term "coffee shop restaurant" in the Sublease.

As a general rule, the construction and legal effect to be given a contract is a question of law which is resolved by the court. *Hanagami v. China Airlines, Ltd.*, 67 Haw. 357, 364, 688 P.2d 1139, 1144 (1984). But when the terms used by the parties to a contract are ambiguous, the parties' intent in using those terms is a question for the trier of fact. *Id.; Bishop Trust Co., Ltd. v. Central Union Church of Honolulu*, 3 Haw. App. 624, 628, 656 P.2d 1353, 1356 (1983). A

term of a contract is ambiguous when it is capable of being reasonably understood in more ways than one. *Maui Land & Pineapple Co., Inc. v. Dillingham Corp.,* 67 Haw. 4, 11, 674 P.2d 390, 395 (1984); *DiTullio v. Hawaiian Ins. & Guar. Co., Ltd.,* 1 Haw. App. 149, 155, 616 P.2d 221, 226 (1980).

Where the terms in a contract are ambiguous, in order to ascertain the parties' intent the trier of fact may consider evidence extrinsic to the written contract, including evidence of the surrounding circumstances and the parties' subsequent conduct in construing the contract. *In re Taxes, Aiea Dairy, Ltd.,* 46 Haw. 292, 306, 380 P.2d 156, 163 (1963). *See also Fairway Builders, Inc. v. Malouf Towers Rental Co., Inc.,* 124 Ariz. 242, 250, 603 P.2d 513, 521 (Ariz. Ct. App. 1979); *Segura v. Kaiser Steel Corp.,* 102 N.M. 535, 538, 697 P.2d 954, 957 (N.M. Ct. App. 1984); *Leija v. Materne Bros., Inc.,* 34 Wash. App. 825, 829, 664 P.2d 527, 529 (1983). The course of dealing between the parties and the custom and usage of the trade at the time are two of the surrounding circumstances which the trier of fact may consider. *See Havens v. Safeway Stores,* 235 Kan. 226, 230, 678 P.2d 625, 629 (1984); *Cook v. Oklahoma Bd. of Pub. Affairs,* 736 P.2d 140, 147 (Okla. 1987); *Hector, Inc. v. United Sav. & Loan Ass'n,* 741 P.2d 542, 546 (Utah 1987).

Here, Properties reasonably understood the term "coffee shop restaurant" in the Sublease to refer to a business whose operator could, by the very nature of the business and without more, sell and serve alcoholic beverages. As Defendants reasonably understood the term, the operator of a "coffee shop restaurant" could dispense such beverages only with the express written permission of the lessor of the premises. Thus, in the Sublease at issue in this case, the term "coffee shop restaurant" was ambiguous.[6]

---

[6] In their answering brief, Defendants strenuously argue that the April 20, 1981 Sublease was not ambiguous. Defendants asserted this point in their pre-trial motion for partial summary judgment, which was denied. Defendants did not file a cross-appeal, so the denial of that motion and the issue of ambiguity is not before us. *See Orso v. City & County,* 56 Haw. 241, 251, 534 P.2d 489, 495 (1975); *In re Keamo,* 3 Haw. App. 360, 364, 650 P.2d 1365, 1368-69 (1982).

Moreover, since a finding of ambiguity or unambiguity is freely reviewable and an appellate court may make its own finding on such issue, *see Hokama v. Relinc Corp.,* 57 Haw. 470, 559 P.2d 279 (1977), we hold that the Sublease term in question was ambiguous and that issue was properly submitted to the jury for resolution.

The parties presented evidence, including expert testimony and documentary evidence, in support of their respective positions. Based on the evidence and instructions of the court, the jury found that the Sublease permitted the sale of liquor on the premises. The trial court, however, concluded otherwise and granted Defendants' motion for judgment n.o.v.

The standard for granting a judgment n.o.v. is the same as that for granting a directed verdict. *Shishido v. State,* 4 Haw. App. 321, 325, 666 P.2d 608, 612 (1983). A judgment n.o.v. should be granted only if the directed verdict should have been granted. *Id.* A directed verdict, in turn, "may be granted only when after disregarding conflicting evidence, giving to the plaintiff's evidence all the value to which it is legally entitled, and indulging every legitimate inference which may be drawn from the evidence in plaintiff's favor, it can be said that there is no evidence to support a jury verdict in his favor." *Wakabayashi v. Hertz Corp.,* 66 Haw. 265, 271, 660 P.2d 1309, 1313-14 (1983) (quoting *Stewart v. Budget Rent-A-Car Corp.,* 52 Haw. 71, 77, 470 P.2d 240, 244 (1970)). *See also Kalilikane v. McCravey,* 69 Haw. ___, ___, 737 P.2d 862, 865 (1987).

Applying these standards to the instant case, we conclude that the trial court improperly granted the judgment n.o.v. The record discloses that Stewart presented evidence showing the following course of dealing regarding the 1964 sublease to Pharmacies, which limited the use of the premises to that of a drugstore: (1) Properties operated a coffee shop restaurant on a portion of the premises under a sublease from Pharmacies with the knowledge and approval of Defendants; (2) under the same use clause, Pharmacies sub-sublet a portion of the premises to another restaurant, which sold alcoholic beverages, again with the knowledge and approval of Defendants; and (3) throughout the term of the 1964 sublease, Stewart felt that Properties had a right to sell alcoholic beverages although such beverages were not actually sold.

The record also discloses that Stewart submitted expert testimony that in the local food service industry's common usage and practice the operation of a coffee shop restaurant includes the right to sell alcoholic beverages. Stewart's counsel read to the jury the names and addresses of approximately 20 coffee shops, coffee houses, and cafes on Oahu (mainly in Honolulu) which were stipu-

lated by the parties to have been licensed to sell alcoholic beverages at the time the Sublease was executed.

The trial court gave instructions, requested by Stewart and Defendants, which permitted the jury to consider such evidence in their deliberation.[7] The jury then rendered its verdict in Stewart's favor. Under such circumstances, neither this court nor the trial court may nullify the jury's special verdict.

In the findings of fact and conclusions of law supporting the granting of the judgment n.o.v.,[8] the trial court concluded that (1)

---

[7] The trial court gave the following pertinent instructions:

Although the rights and obligations of the parties are normally defined by the terms of the lease, when a term is ambiguous, you may consider the party's intent. The intent of the parties is determined by considering the relationship of the parties, what they said and what they did, and all of the surrounding circumstances. A person's secret intent has no bearing; only the intent indicated by his words and acts may be considered.

Leases must be construed as a whole so as to give effect to the intention of the parties, and so as to give force and effect to all of the provisions. The language is to be reasonably construed so as not to give one of the parties an unreasonable advantage over the other.

Intent to contract — or intent concerning specific provisions of the contract — is determined objectively. The manifestation of a party's intention rather than his actual, real, or secret intent is controlling.

A course of dealing is a sequence of previous conduct between the parties to an agreement which is fairly to be regarded as establishing a common basis of understanding for interpreting their expression and conduct.

Unless otherwise agreed, a course of dealing between the parties gives meaning to or supplements or qualifies their agreement.

Custom and trade practices are a legitimate way of supplying the inference that the parties to a contract had reason to know of a given meaning to a term in the contract.

Unless otherwise agreed, a usage of trade in the vocation or trade in which the parties are engaged or a usage of trade of which they know or have reason to know gives meaning to or supplements or qualifies their agreement.

Illustration 8. A leases to B a portion of a building for "confectionery store purposes." By local usage at the time and place where the lease is made and the building is located, "confectionery store purposes" includes the giving of light lurches [sic]. Unless otherwise agreed, the usage is part of the contract.

Tr. Vol. V at 179-81.

[8] Since a judgment n.o.v. should be granted only if a directed verdict should have been given, and since in determining whether a directed verdict is proper all conflicting evidence is disregarded and the evidence and inferences are viewed in the light favorable to the non-moving party, findings of fact and conclusions of law are unnecessary and inappropriate in granting or denying a motion for judgment n.o.v. The trial court, however, may give its reasons for the granting or denying of such motion.

only the "expressed intentions of the parties" are relevant in resolv-
ing the ambiguity in the Sublease and (2) the only "expressed intent
of the parties" appears in the February 18, 1981 letter agreement,
which intent was that the coffee shop restaurant be operated after
the signing of the Sublease just as it had been operated before the
signing of the Sublease without the sale of alcoholic beverages.
Record, Vol. 6 at 10-11. First, we disagree with the trial court that
only express intentions are relevant. Second, we do not agree that
the February 18, 1981 letter agreement which was executed only by
Pharmacies and Defendants reflected the intent of Properties.[9]
Moreover, the jury considered the letter which was admitted into
evidence (Defendants' Exhibit I) and the conflicting testimony re-
garding it and arrived at its verdict. In our view, it was improper
for the trial court to make its own finding and conclusion with
respect to the import of the February 18, 1981 letter agreement.

In essence, there was no express statement of the parties' intent
concerning the ambiguity in the Sublease. The jury, therefore, was
properly permitted to consider the surrounding circumstances to
determine the parties' intent.

Accordingly, we reverse the oral judgment n.o.v.

### III. NEW TRIAL

Pursuant to HRCP Rule 50(c)(1)[10] the trial court, upon orally
granting Defendants' motion for judgment n.o.v., also condition-
ally granted Defendants' alternative motion for new trial. The
court, however, failed to specify the grounds for granting the mo-
tion as required by Rule 50(c)(1).

---

[9] The February 18, 1981 letter agreement (Defendants' Exhibit I) provided
signature lines for Pharmacies, Properties, and Defendants. Pharmacies and De-
fendants signed the letter agreement, but on the signature line for Properties there
is an "X" and the initials of Stewart and Brennan. Stewart testified that he signed the
letter agreement for Pharmacies only, and "X"ed the other signature line since
Properties was not signing.

---

[10] Hawaii Rules of Civil Procedure Rule 50(c) (1) provides in relevant part:

If the motion for judgment notwithstanding the verdict, provided for in
subdivision (b) of this rule, is granted, the court shall also rule on the motion for
new trial, if any, by determining whether it should be granted if the judgment is
thereafter vacated or reversed, and shall specify the grounds for granting or
denying the motion for the new trial.

Generally, the granting of a new trial is within the trial court's discretion and will not be overturned absent an error of law or a clear abuse of discretion. *Lovell Enter., Inc. v. Campbell-Burns Wood Prod., Inc.,* 3 Haw. App. at 541, 654 P.2d at 1368. Although the trial court failed to specify the grounds for its conditional grant of a new trial, we will affirm the ruling if it is supported by any of the grounds asserted in Defendants' alternative motion for new trial. *See Marchant v. Clark,* 225 Or. 273, 274, 357 P.2d 541, 542 (1960). Based on our review of Defendants' motion and the record, however, we hold that the trial court abused its discretion in conditionally granting a new trial.

In their alternative motion for new trial, Defendants contended that (A) the jury verdict was manifestly against the weight of the evidence; (B) Stewart's counsel elicited jury sympathy for Stewart by emphasizing his advanced age during closing argument, and prejudice against Brennan by referring to his wealth during the trial; (C) Stewart's Instruction No. 3,[11] given over Defendants' objection, invited the jury to focus on the terms of the Sublease rather than the express intent of the parties; and (D) Stewart violated a pre-trial in limine order during the trial. On Defendants' motion in limine, the trial court had ruled that it would permit testimony regarding the discussions between the parties concerning the assignment of the Sublease, but not testimony regarding what actions Defendants took as a result of those discussions or what happened to Properties' coffee shop restaurant when the Sublease was not sold and assigned.

We address each of the contentions in order.

## A.

The jury's verdict was not contrary to the weight of the evidence. As discussed in Part II of this opinion, there was substantial evidence presented at trial to support the verdict.

---

[11] Stewart's Instruction No. 3 as read to the jury is as follows:

The parties have stipulated that the sublease dated April 20, 1981, marked as Plaintiff's Exhibit 1 between plaintiff and defendants constitutes the lease between plaintiff and defendants. The lease is treated as a contract between the parties. The rights and obligations of the parties are defined by the terms of the lease.

Tr. Vol. V at 179.

## B.

We will not consider Defendants' contention regarding jury sympathy and prejudice because the record reveals that Defendants did not object to the allegedly improper conduct of Stewart's counsel. A party may not rely on alleged trial misconduct as a ground for new trial unless the party had objected to that conduct and brought it to the attention of the court. *Leyson v. Steuermann*, 5 Haw. App. 504, 510-11, 705 P.2d 37, 43 (1985). *See also Bachran v. Morishige*, 52 Haw. 61, 70, 469 P.2d 808, 813 (1970) (alleged misconduct by jurors).

## C.

The trial court's instructions to the jury "must be viewed in light of all the instructions as a whole[.]" *Agee v. Kahului Trucking & Storage, Inc.*, 67 Haw. 365, 369, 688 P.2d 256, 259 (1984). "[T]he fact that a particular instruction or isolated paragraph may be objectionable, as inaccurate or misleading, will not constitute ground for reversal." *Kometani v. Heath*, 50 Haw. 89, 94, 431 P.2d 931, 935 (1967) (quoting *Ciacci v. Woolley*, 33 Haw. 247, 262 (1934)).

Here, after the trial court gave Stewart's Instruction No. 3, it gave Defendants' Instructions Nos. 2 and 3.[12] These two instructions cured any possible prejudice to Defendants which might have arisen from giving Stewart's Instruction No. 3. Accordingly, there was no reversible error regarding the jury instructions.

---

[12] Defendants' Instruction No. 3 as read to the jury is as follows:

> Although the rights and obligations of the parties are normally defined by the terms of the lease, when a term is ambiguous, you may consider the party's [sic] intent. The intent of the parties is determined by considering the relationship of the parties, what they said and what they did, and all of the surrounding circumstances. A person's secret intent has no bearing; only the intent indicated by his words and acts may be considered.

Tr. Vol. V at 179-80.

> Defendants' Instruction No. 2 as read to jury is as follows:
> Intent to contract — or intent concerning specific provisions of the contract — is determined objectively. The manifestation of a party's intention rather than his actual, real, or secret intent is controlling.

*Id.* at 180.

## D.

During the trial, on two occasions Defendants moved for a mistrial on grounds of Stewart's violations of the trial court's pre-trial in limine order. Defendants did not otherwise object on these grounds at trial. In denying Defendants' motions, the trial court ruled that any damage done by the alleged violation of the in limine order was not so serious as to warrant a mistrial.

HRCP Rule 61 provides in part that "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." With respect to these alleged violations of the in limine order, we agree with the trial court that any possible harm to Defendants was not so substantial as to warrant a mistrial. *See Benuska v. Dahl,* 87 Ill. App. 3d 911, 913, 410 N.E.2d 249, 251 (1980) ("[a] mistrial should be declared only as a result of some occurrence of such character and magnitude that a party is deprived of its right to a fair trial.")

Since none of the four grounds upon which Defendants based their alternative motion for new trial had merit, the trial court abused its discretion in conditionally granting a new trial.

## IV. SUMMARY JUDGMENT

After the trial court orally granted the judgment n.o.v. in Defendants' favor, the court eventually granted a summary judgment in favor of Defendants on all seven counts of the amended complaint.

The record indicates that the court relied upon the erroneous oral judgment n.o.v. when it granted the summary judgment. Inasmuch as the oral judgment n.o.v. is being reversed and the jury's special verdict reinstated, the summary judgment must also be reversed.

## V. CONCLUSIONS

For the reasons stated above, we (1) reverse the oral judgment n.o.v.; (2) reverse the written order conditionally granting a new

trial;[13] (3) reinstate the jury's special verdict; (4) reverse the summary judgment in Defendants' favor; and (5) remand the case for further proceedings consistent with this opinion.

*James C. McWhinnie (Edward J. Bybee* with him on the briefs; *Rother, Bybee, Chang & Rulon,* of counsel) for plaintiff-appellant.

*James T. Leavitt, Jr. (Woodruff K. Soldner* with him on the brief) for defendants-appellees.

---

[13] "When a judgment notwithstanding the verdict is reversed, [the appellate] court may also reverse the conditional grant of the new trial and direct that judgment be entered on the verdict." *Vassiliades v. Garfinckel's, Brook Bros.,* 492 A.2d 580, 593, n.8 (D.C. 1985). *See also* 9 C. Wright & A. Miller, Federal Practice and Procedure: *Civil* § 2540 (1971).