**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-18-0000717**
**19-DEC-2023**
**07:55 AM**
**Dkt. 257 MO**

NO. CAAP-18-0000717

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


AOAO QUEEN EMMA GARDENS and TOUCHSTONE PROPERTIES, LTD.,
Respondents-Appellants/Cross-Appellees/Appellees
v.
TOMMY WAI HUNG MA and SINDY YEE MA,
Petitioners-Appellees/Cross-Appellants/Appellants,
and
OFFICE OF ADMINISTRATIVE HEARINGS CONDOMINIUM DISPUTE RESOLUTION
PILOT PROGRAM DEPARTMENT OF COMMERCE AND CONSUMER AFFAIRS,
STATE OF HAWAIʻI, Appellees/Cross-Appellees/Appellees


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 17-1-1914-11)


MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Leonard and McCullen, JJ.)

### I. Introduction

This secondary appeal from a 2017 decision entered by the State of Hawaiʻi Department of Commerce and Consumer Affairs (**DCCA**) (**2017 DCCA Decision**[1]) arises out of a dispute over the proper interpretation of condominium bylaws raised by Petitioner-Appellees and Cross-Appellants/Appellants Tommy Wai Hung Ma and Sindy Yee Ma (**the Mas**) against their condominium association,

---

[1] On October 24, 2017, the DCCA entered its "Hearings Officer's Findings of Fact, Conclusions of Law, and Order on Remand From The Circuit Court[.]"

Association of Apartment Owners of Queen Emma Gardens
(**Association**), and the managing agency, Touchstone Properties,
Ltd. (**Touchstone**)(collectively, **AOAO**).  The Mas appeal from a
judgment by the Circuit Court of the First Circuit (**Circuit
Court**) in favor of Respondents/Appellants and Cross-
Appellees/Appellees AOAO.[2]  Specifically, the Mas appeal from the
Judgment filed on January 28, 2019, and also challenge the
"Amended Order Reversing in Part and Affirming in Part the
Department of Commerce and Consumer Affairs' Hearings Officer's
Findings of Fact, Conclusions of Law, and Order on Remand From
the Circuit Court Filed October 24, 2017," filed on October 15,
2018 (**Order Affirming in Part and Reversing in Part the 2017 DCCA
Decision**), and the announcement of decision from the Circuit
Court hearing held on August 21, 2018 (**Announcement of Decision**).

On appeal, the Mas contend the Circuit Court: (1)
diminished or deprived the Mas of property without due process of
law; (2) failed to make findings that the AOAO's substantial
rights may have been prejudiced pursuant to Hawaiʻi Revised
Statutes (**HRS**) § 91-14(g) (2012); (3) erred by failing to apply
the statutory definition of "property" from HRS § 514B-3 (2018),
which the Mas contend was binding on the Circuit Court; (4)
failed to modify or reverse the 2017 DCCA Decision which
considered extrinsic evidence after the DCCA found the Bylaws
unambiguous; and (5) erred by failing to construe ambiguity
against the AOAO as the party who supplied the Bylaws, under the
doctrine of *contra proferentem*.[3]

For the reasons discussed below, we affirm.

---

[2]  The Honorable James H. Ashford presided.

[3]  The Mas also contend that the Circuit Court violated *stare decisis*,
including, principles that an AOAO may not withdraw from recorded
representations or act contrary to them, and that condominium bylaws and
declarations are a contract.  However, they make no cogent argument in support
of this issue.  Therefore, this point is deemed waived under Hawaiʻi Rules of
Appellate Procedure (**HRAP**) Rule 28(b)(7).  Further, the Mas fail to provide
any argument or cite to any authority in support of their request for
attorney's fees and thus this point is also waived.  See HRAP Rule 28(b)(7)
("Points of error not argued may be deemed waived.").

## II. Background

### A. First Round of Proceedings

Previously, this case came before this court with substantially the same relevant factual background in AOAO Queen Emma Gardens v. Ma, No. 30694, 2013 WL 1397327 (Haw. App. April 5, 2013) (mem. op.) ("AOAO Queen Emma Gardens I").

In October 2002, the Mas purchased a condominium unit (**the Unit**) located in the Queen Emma Gardens Condominium (**Queen Emma Gardens**). Id. at *1. "The Association is an association of apartment owners created to represent the apartment owners of the Queen Emma Gardens and is governed by the 'By-Laws of the Association of Apartment Owners of Queen Emma Gardens' (**Bylaws**). Touchstone is the managing agent for Queen Emma Gardens." Id. (footnotes omitted). In October 2002, and at all times relevant to this appeal, Article X, Section 2 of the Bylaws read as follows:

> The Association shall procure and maintain . . . policies (collectively, the "Policy") of liability insurance to insure the Board, the Association, each apartment owner, the Managing Agent, and other employees of the Association against claims for personal injury, death, property damage and such broader coverage as the Board shall determine <u>arising out of the condition of the property or activities thereon</u>, under an ISO Commercial General Liability form. Said insurance shall provide combined single limit coverage of not less than [$2,000,000] or such higher limits as the Board may from time to time establish with due regard to the then prevailing prudent business practice in the state of Hawaii as reasonably adequate for the Association's protection. . . .

(Emphasis added.) Pursuant to the Bylaws, "the AOAO procured an Insurance Service (**ISO**) Commercial General Liability (**CGL**) policy . . . with a coverage limit for bodily injury of up to $1,000,000 for each occurrence with an aggregate coverage of $2,000,000, and an umbrella policy providing an additional $5,000,000 of coverage." AOAO Queen Emma Gardens I, 2013 WL 1397327, at *2. Each of the two policies acquired by the AOAO "insured each individual insurance owner of the insured condominium, *but only with respect to liability arising out of the ownership, maintenance or repair of that portion of the premises which is*

3

*not reserved for that unit owner's exclusive use or occupancy*." Id. (emphasis added).

"After purchasing the Unit, the Mas leased it to the existing tenant, Ronald H. Gomes (**Gomes**).  On the night of December 1, 2005, Gomes' body was discovered on the ground below the Unit."  Id.  Subsequently, "[t]he Estate of Ronald H. Gomes brought a wrongful death action (Civil No. 07-1-1292-07) against, among others, the Mas and the Association."  Id. (footnote omitted).  "The Mas tendered their defense and indemnity to Insurance Associates Inc., who . . . provided a defense under a reservation of rights theory."  Id.  "Eventually, the lawsuit was summarily adjudicated in favor of all named defendants, including the Mas."[4]  Id.

"While the wrongful death proceedings were ongoing, the Mas filed a Request for a Hearing with the DCCA Office of Administrative Hearings against the AOAO."  Id. (footnote omitted).  The Mas alleged that the AOAO violated the Bylaws by failing to provide insurance which covered areas reserved for the individual unit owners' exclusive use or occupancy.  Id.  On a motion for summary judgment, the DCCA found in favor of the Mas concluding that the Bylaws unambiguously required the AOAO to provide insurance coverage to unit owners for areas under their exclusive use or occupancy (**2009 DCCA Decision**).  Id. at *2-3.  The AOAO appealed to the Circuit Court.  Id. at *3.  After holding arguments on the merits, the Circuit Court reversed the 2009 DCCA Decision, concluding that the DCCA clearly erred in interpreting the Bylaws which only required the AOAO to provide coverage for the common elements.  Id.

The Mas timely appealed the Circuit Court's decision to this court on August 25, 2010.  Id.  The Mas raised fourteen points of error in that appeal, including a primary argument that

---

[4]  Plaintiffs in Civil No. 07-1-1292-07 appealed to this court in Appeal No. 30036.  In that case, the court dismissed the appeal as to claims brought by the Estate of Ronald H. Gomes by Order dated November 10, 2011.  The appeal was later dismissed in its entirety by Order dated February 10, 2012.

the Circuit Court erred in reversing the 2009 DCCA Decision by interpreting the Bylaws to limit the AOAO's responsibility of providing insurance coverage for common areas, but not for areas under unit owners' exclusive use or occupancy. See id. at *1 n.2.  In a Memorandum Opinion entered April 5, 2013, this court held that the relevant provision of the Bylaws is ambiguous; the DCCA summary judgment in favor of the Mas was therefore inappropriate; and the Circuit Court erred in failing to remand the case to the DCCA for further proceedings to resolve the genuine issue of material fact as to the parties' intent, reasoning that "the intent of the parties was essential in resolving the ambiguity of the language of the Bylaws".  Id. at *5-6.  The ICA remanded to the Circuit Court to remand to the DCCA for further proceedings consistent with this court's opinion.  Id. at *6.

**B.**     **Proceedings Upon Remand**

On October 24, 2017, following an evidentiary hearing before the DCCA, the hearings officer[5] entered the 2017 DCCA Decision.  There, the hearings officer found that: the language in the Bylaws is not ambiguous; based on the extrinsic evidence, the sole intent of the parties to the Bylaws was to provide liability insurance "covering only those conditions and activities arising from the common elements"; and that, nonetheless, given the rules governing the interpretation of contracts, the AOAO was required to procure and maintain liability insurance coverage for owners against claims for personal injury, death, and property damage arising from both the apartment units and the common elements.

The AOAO appealed and the Mas cross-appealed from the 2017 DCCA Decision to the Circuit Court.  A hearing was held before the Circuit Court on August 21, 2018.  The Circuit Court granted the AOAO's appeal and denied the Mas' cross-appeal in its entirety.  The Circuit Court (1) reversed the DCCA hearings

---

[5]  Senior Hearings Officer Craig H. Uyehara presided over the hearing.

officer's conclusion that Article X, Section 2 of the Bylaws is unambiguous; (2) affirmed the DCCA hearings officer's finding that extrinsic evidence established the intent of the parties did not require the AOAO to secure liability insurance for the exclusively owned apartment units; and (3) reversed the DCCA hearings officer's determination that the AOAO was nevertheless required to obtain liability insurance for the exclusively owned apartment units based on the rules governing the interpretation of contracts.  The Circuit Court entered the Order Affirming in Part and Reversing in Part the 2017 DCCA Decision.  The Mas timely appealed.

### III. Standards of Review

"Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal.  The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) [1993] to the agency's decision." Flores v. Bd. of Land & Nat. Res., 143 Hawaiʻi 114, 120, 424 P.3d 469, 475 (2018) (citing Paul's Elec. Serv., Inc. v. Befitel, 104 Hawaiʻi 412, 416, 91 P.3d 494, 498 (2004) (brackets in original)).  Under HRS § 91-14(g) (Supp. 2016),[6] an agency's conclusions of law pursuant to subsections

---

[6] **§91-14  Judicial review of contested cases**.

. . . .

(g)    Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
(1)    In violation of constitutional or statutory provisions; or
(2)    In excess of the statutory authority or jurisdiction of the agency; or
(3)    Made upon unlawful procedure; or
(4)    Affected by other error of law; or
(5)    Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(continued...)

(1), (2), and (4) are reviewed de novo; while an agency's findings of fact pursuant to subsection (5) are reviewed under the clearly erroneous standard.  <u>Matter of Haw. Elec. Light Co.</u>, 145 Hawaiʻi 1, 10-11, 445 P.3d 673, 682-83 (2019) (citation omitted).

Appellate courts review mixed questions of law and fact under the "clearly erroneous" standard because the conclusion is dependent upon the facts and circumstances of the particular case.  <u>Yoshii v. State</u>, 137 Hawaiʻi 437, 447, 375 P.3d 216, 226 (2016) (citations omitted).

## IV. Discussion

**A.   The Circuit Court did not violate the Mas' due process rights**

The Mas contend the Circuit Court's determination that the term "property" in Article X, Section 2 of the Bylaws is ambiguous violated the Mas' due process rights.[7]  The Mas specifically argue that the Circuit Court's determination on ambiguity effectively circumvented provisions in the Queen Emma Gardens Declaration (**Declaration**).  The Mas argue that the Declaration by its terms, prevent the AOAO from materially amending or adding to the Bylaws or Declaration concerning insurance or owners' interest in common elements or limited common elements without the prior written approval of eligible unit owners.[8]  The Mas appear to argue that the Circuit Court's

---

[6](...continued)
            (6)    Arbitrary, or capricious, or characterized by
                   abuse of discretion or clearly unwarranted
                   exercise of discretion.

[7]  The Mas specifically contend the Circuit Court's determination violated their rights under article I, section 5 of the Hawaiʻi Constitution and the 14th Amendment of the United States Constitution.

[8]  Section Y of the Declaration, in relevant part, provides:

       2. Unless the Eligible Holders of mortgages on apartments to
       which at least fifty-one percent (51%) of the votes of
       apartments subject to mortgages held by such eligible
       Holders are allocated and at least sixty-seven percent (67%)
                                                        (continued...)

determination on ambiguity thus violated their property rights by diminishing or depriving them of some undisclosed ownership rights in their Unit or in the common elements of Queen Emma Gardens.  We are unpersuaded by this argument.

As a preliminary matter, the Circuit Court's de novo determination of ambiguity in the Bylaws following the court's four corners[9] review, does not, as the Mas contend, constitute a material amendment or addition to the Bylaws or Declaration that would be violative of the Declaration.[10]  The Circuit Court's determination merely establishes that an ambiguity exists - a conclusion that was already established as the law of the case in <u>AOAO Queen Emma Gardens I</u>.  Thus, the Circuit Court's determination did not add or materially alter the language of the

_____

[8](...continued)
of the individual apartment owners have given their prior written approval, or such higher percentage as otherwise provided by this Declaration or the By-Laws or the Act, the Association shall not be entitled to:

. . . .

(f)    materially amend any provision of this Declaration or the By-Laws or to add material provisions thereto, which establish, provide for, govern, or regulate any of the following: . . . (iv) insurance or fidelity bonds; . . . (ix) the interest in the common elements or limited common elements[.]

[9]  We note that the Mas contend as part of their due process argument that "the Circuit Court rejected the "four corners" rule by deciding that the term "property" was ambiguous" in the Bylaws.  We reject this contention as inaccurate.  Our review of the transcript of the oral argument proceedings before the Circuit Court on August 21, 2018, indicate that the Circuit Court conducted its own independent four corners analysis of the Bylaws in making its determination.  At that proceeding, the Circuit Court stated, in relevant part:

[O]n my own analysis of the four corners of the by-laws, I find the by-laws to be ambiguous in that I disagree with the hearings officer who concluded that the by-laws are unambiguous.  I applied the de novo standard of review to his determination, to this ruling to make my own determination that . . . [the] by-laws are ambiguous.

[10]  The Mas also argue that the Circuit Court prejudicially refused to apply Section Y of the Declaration.  However, as discussed in this section, construing an ambiguous term in the Bylaws according to the intent of the parties is not a material addition or amendment, and therefore, the Circuit Court did not err in declining to apply Section Y of the Declaration.

Bylaws in contravention of the Declaration's voting requirements. The Circuit Court's determination does not violate the Declaration.

As to the Mas' due process argument, the Hawaiʻi Supreme Court has stated: "[t]he basic elements of procedural due process of law require notice and an opportunity to be heard at a meaningful time and in a meaningful manner before governmental deprivation of a significant property interest." Sandy Beach Def. Fund v. City Council of City & Cnty. of Honolulu, 70 Haw. 361, 378, 773 P.2d 250, 261 (1989) (citations omitted). Requisite to asserting a right to procedural due process, a party must first show that they have a property interest within the meaning of the due process clause. Id. at 377, 773 P.2d at 260.

First, while the Mas may have a protected property interest in the Unit, the briefs and record are devoid of any cogent argument, supporting evidence, or on-point case law to support the contention that the Mas have a protected property interest in AOAO-provided insurance for privately owned units, which the Mas ultimately seek in this case. Further, the reasoning underlying the Mas' argument on this point is that the AOAO is "limiting common elements" by construing the term "property" in the Bylaws to exclude privately owned apartment units. The Mas contend the term "property" should be construed broadly to include common elements and privately owned apartment units, so that the AOAO should be required to procure and maintain liability insurance for both. Neither this court's determination on ambiguity in AOAO Queen Emma Gardens I, nor the DCCA or Circuit Court's subsequent interpretations of the ambiguous term, expand or limit the "common elements" as provided in the Bylaws. Instead, the Circuit Court's interpretation of the ambiguous term narrowly affects whether or not the AOAO should be required to procure liability insurance for privately owned apartment units. To the extent that the Mas' argument is premised on the notion that privately owned apartment units are or should be treated as common elements, this contention lacks merit.

Second, even if we assume arguendo that the Mas assert a valid property interest, they make no cogent or meritorious argument regarding any specific alleged inadequacy in process provided by the Circuit Court. See Sandy Beach Def. Fund, 70 Haw. 361, 773 P.2d 250 (1989). Instead, the Mas contend "the process due to protect [the Mas' interest in condominium ownership] was not followed by the Court's decision[,]" loosely citing to all points of error on appeal. The record shows that the Mas had the opportunity to brief the issues and have a hearing before the Circuit Court. Without specific arguments as to inadequacy of the process afforded, the Mas have waived this issue.[11]

Thus, the Circuit Court did not diminish or deprive the Mas of their property rights without due process of law.

**B. The Circuit Court met the requirements of HRS § 91-14(g)**

The Mas contend the Circuit Court erred in failing to "conclude anywhere, or make mandatory findings that the AOAO's substantial rights may have been prejudiced by the" 2017 DCCA Decision, in alleged violation of HRS § 91-14(g) and the relevant case law. In response, the AOAO contends the Circuit Court "implicitly found that substantial rights of the AOAO were prejudiced when [the court] relied on the written and oral arguments of the AOAO in its ruling"[12] sufficiently meeting the requirements of HRS § 91-14(g).

We first look to the plain language of HRS § 91-14(g), which reads as follows:

> (g) Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of

---

[11] HRAP Rule 28(b)(7) ("Points not argued may be deemed waived.").

[12] We note that during the August 21, 2018 oral argument before the Circuit Court, the court stated it agreed with the AOAO's oral and written analysis before vacating the DCCA order requiring the AOAO to procure liability insurance. Moreover, the Circuit Court determined that the DCCA order requiring the AOAO to procure and maintain liability insurance for portions of the premises reserved for owners' exclusive use is "unsupported" and thus reversed.

the petitioners may have been prejudiced because the
administrative findings, conclusion, decision, or orders
are:

    (1)    In violation of constitutional or statutory
           provisions; or
    (2)    In excess of the statutory authority or jurisdiction
           of the agency; or
    (3)    Made upon unlawful procedure; or
    (4)    Affected by other error of law; or
    (5)    Clearly erroneous in view of the reliable, probative,
           and substantial evidence on the whole record; or
    (6)    Arbitrary, or capricious, or characterized by abuse of
           discretion or clearly unwarranted exercise of
           discretion.

(Emphasis added.)

The plain language of HRS § 91-14(g) provides that a court may reverse or modify an agency decision and order "if the substantial rights of the petitioners may have been prejudiced because" of the agency's decision. (Emphasis added.) The provision does not, by its plain language, require the court to articulate or provide written findings to that effect. Despite the absence of this requirement in the statute, the Mas contend that findings as to potential prejudice of an appellant's substantial rights are nonetheless mandatory, citing to Hawaiʻi Supreme Court case law adopting an interpretation from this court to support their contention. See In re Hawaiian Elec. Co., 81 Hawaiʻi 459, 467, 918 P.2d 561, 567 (1996) (citing Outdoor Circle v. Harold K.L. Castle Trust Estate, 4 Haw. App. 633, 638, 675 P.2d 784, 789 (App. 1983)).

In Outdoor Circle, this court stated that HRS § 91-14(g) requires that - in order for the court to revise or modify an agency decision - it must "find" that an appellant's substantial rights may have been prejudiced under one of the six subsections of the statute. 4 Haw. App. at 638, 675 P.2d at 789. The relevant case law is, however, not instructive as to how those findings must be made or presented by the court. See In re Hawaiian Elec. Co., 81 Hawaiʻi at 467, 918 P.2d at 567; Outdoor Circle, 4 Haw. App. at 638, 675 P.2d at 789; and Nakamine v. Board of Trustees, 65 Haw. 251, 254-55, 649 P.2d 1162, 1164-65 (1982). We decline to adopt the Mas' argument that specific oral or written findings from the Circuit Court regarding prejudice to

the AOAO's substantial rights was required under the circumstances existing here.

Here, the Circuit Court did not make express written findings as to the potential for the AOAO's substantial rights to be prejudiced by the 2017 DCCA Decision.  However, based on the record, it is evident from the Circuit Court's oral statements at the August 21, 2018 hearing that the court agreed with the AOAO's oral and written analysis - including that the 2017 DCCA Decision was wrong and the impracticability of procuring liability insurance as a result of the 2017 DCCA Decision.  The record sufficiently supports the Circuit Court's determination that the AOAO's substantial rights were prejudiced by the 2017 DCCA Decision.

We conclude the Circuit Court did not err and the Mas' point of error (2) lacks merit.

**C.    The Circuit Court did not err in affirming in part and denying in part the 2017 DCCA Decision**

The following discussion addresses the Mas' points of error (3), (4), and (5), respectively.

**1.    The Circuit Court did not err in rejecting the Mas' contention that a statutory definition of "property" applied**

The Mas assert that the Circuit Court erred by not applying the statutory definition of "property" under HRS § 514B-3 for purposes of interpreting Article X, Section 2 of the Bylaws.  We disagree.

The crux of this secondary appeal is the interpretation of Article X, Section 2, which was also the issue before this court in AOAO Queen Emma Gardens I, 2013 WL 1397327, at *4-6. The Mas contend the Bylaws unambiguously require the AOAO to provide insurance coverage for damages arising out of the use of areas in Queen Emma reserved for the exclusive use or occupancy of the owner, including owners' individual units.  On the other hand, the AOAO contends the Bylaws only require them to provide insurance coverage to the unit owners for damages arising out of the use of the common elements.

12

We first observe that the DCCA made additional findings on the issue of ambiguity, although we did not remand on that issue in AOAO Queen Emma Gardens I, 2013 WL 1397327, at *5-6.  In AOAO Queen Emma Gardens I, this court expressly stated that "[w]e agree with the circuit court that the provision is ambiguous." Id. at *5.  We further noted "[w]here the terms in a contract are ambiguous, in order to ascertain the parties' intent the trier of fact may consider evidence extrinsic to the written contract, including evidence of the surrounding circumstances and the parties' subsequent conduct in construing the contract."  Id. (citation omitted).  We thus concluded the Circuit Court had erred by not "remanding this case to the DCCA for further proceedings to resolve [the] genuine issue of material fact as to **the parties' intent**."  Id. at *6 (emphasis added).  AOAO Queen Emma Gardens I concluded by remanding the case to the Circuit Court "to remand to the DCCA for further proceedings consistent with this opinion."  Id. at *7.

Despite the instructions of this court, the DCCA issued new conclusions on ambiguity, exceeding the scope of its power on remand.  See Standard Mgmt., Inc. v. Kekona, 99 Hawaiʻi 125, 137, 53 P.3d 264, 276 (App. 2001) ("When a reviewing court remands a matter with specific instructions, the trial court is powerless to undertake any proceedings beyond those specified therein." (citation omitted)).  The DCCA acknowledged the court's specific instructions in AOAO Queen Emma Gardens I but nevertheless reasoned that the record before the court included only five pages of the sixty-five-page Bylaws, thus, the DCCA was "required" to reconsider the issue of ambiguity "*in the context of the entire Bylaws.*"[13]  (Emphasis in original.)

In reviewing the DCCA hearings officer's determination on ambiguity, the Circuit Court conducted its own de novo analysis of the four corners of the Bylaws.  To the extent the

---

[13]  In AOAO Queen Emma Gardens I, five pages of the Bylaws were under review.  The sixty-five-page Bylaws were first introduced when the Mas filed a Second Motion for Summary Judgment/Summary Adjudication or Summary Disposition on December 5, 2013.  Attached to the motion was a complete set of Bylaws.

13

Circuit Court conducted its own analysis rather than applying the law of the case established in AOAO Queen Emma Gardens I, the Circuit Court's independent analysis was unnecessary.  Hussey v. Say, 139 Hawaiʻi 181, 185, 187, 384 P.3d 1281, 1286, 1288 (2016) ("The law of the case doctrine holds that a determination of a question of law made by an appellate court in the course of an action becomes the law of the case and may not be disputed by a reopening of the question at a later stage of the litigation." (citation and internal quotation marks omitted)).

Based on the law of case established in AOAO Queen Emma Gardens I, Article X, Section 2 of the Bylaws is ambiguous and the pertinent issue on remand was the intent of the parties.  The Circuit Court properly rejected the Mas' contention that it was required to apply the statutory definition of "property" under HRS § 514B-3 in interpreting Article X, Section 2.

> **2.   The Circuit Court did not err in affirming the DCCA hearings officer's consideration of extrinsic evidence to resolve the genuine issue of material fact as to the parties' intent, as mandated by this court on remand**

In AOAO Queen Emma Gardens I this court, after determining that the Bylaws were ambiguous, explicitly held that the Circuit Court should have remanded the case to the DCCA "to resolve this issue of material fact as to the parties' intent" in order to resolve the ambiguity in the Bylaws.  2013 WL 1397327, at *5-6.  This court noted explicitly that "the intent of the parties was essential in resolving the ambiguity in the language of the Bylaws[.]"  Id. at *6 (emphasis added).

"Where the terms in a contract are ambiguous, in order to ascertain the parties' intent the trier of fact may consider evidence extrinsic to the written contract, including evidence of the surrounding circumstances and the parties' subsequent conduct in construing the contract."  Stewart v. Brennan, 7 Haw. App. 136, 143, 748 P.2d 816, 821 (App. 1988) (citation omitted).  "The course of dealing between the parties and the custom and usage of

14

the trade at the time are two of the surrounding circumstances which the trier of fact may consider."  Id. (citations omitted).

The DCCA complied with this part of our court's mandate on remand and found, based on extrinsic evidence, that the sole intent of the parties to the Bylaws was to provide liability insurance "covering only those conditions and activities arising from the Project's common elements."  Subsequently, the Circuit Court affirmed the DCCA finding on intent of the parties.[14]

We hold that in view of the reliable, probative, and substantial evidence on the whole record, the Circuit Court's order affirming the DCCA finding on intent was not clearly erroneous, and was well within the scope of this court's mandate on remand.

### 3.  The Circuit Court did not err in declining to interpret the meaning of "property" against the drafter of the contract

Finally, we dispose of the Mas' contention that the Circuit Court erred by declining to interpret the meaning of "property" in the Bylaws against the AOAO under the doctrine of contra proferentem.

As discussed above, upon this court's determination of ambiguity in the Bylaws, we specifically instructed the DCCA to consider extrinsic evidence to resolve the "genuine issue of material fact as to the parties' intent" in order to address the ambiguity.  AOAO Queen Emma Gardens I, 2013 WL 1397327, at *5-6. We hold that the Circuit Court properly did not apply the doctrine of contra proferentem, and instead reviewed and affirmed the DCCA hearings officer's factual findings on intent of the parties to construe the ambiguous term, as this court instructed in AOAO Queen Emma Gardens I.  See id.; see also Kekona, 99 Hawaiʻi at 137, 53 P.3d at 276 ("When a reviewing court remands a

_____

[14]  As discussed above, the DCCA hearings officer's fresh determination on ambiguity exceeded the scope of this court's mandate on remand.  Further, despite the DCCA finding that the provision in the Bylaws was unambiguous, it proceeded to assess the intent of the parties.

matter with specific instructions, the trial court is powerless to undertake any proceedings beyond those specified therein.").

### V. Conclusion

Based on the foregoing, we affirm the Judgment entered by the Circuit Court of the First Circuit on January 28, 2019.

DATED:  Honolulu, Hawaiʻi, December 19, 2023.

Stephen M. Shaw,
for Petitioners-Appellees/
Cross-Appellants/Appellants

Shannon L. Wack,
Jodie D. Roeca,
for Respondents/Appellants-
Cross-Appellees/Appellees

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge